

FILED

FEB 1 0 2025

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA

v.

SHAWKI HAMMOUD,
aka Chouki Hammoud,
aka Chouki Hamoud,

Defendant.

Case No. 2:21-cr-0180-JAM

## REVISED[1] AFFIDAVIT IN SUPPORT OF REQUEST FOR
## EXTRADITION OF SHAWKI HAMMOUD

I, Christina M. McCall, being duly sworn, depose and state:

1.      I am a citizen of the United States of America and a resident of the state of California.    I make this affidavit in support of the request of the United States of America to the United Kingdom of Great Britain and Northern Ireland for the extradition of Shawki Hammoud, a citizen of Lebanon.

2.      In May 2004, I received a Juris Doctor degree from the University of California at Los Angeles School of Law in Los Angeles, California.    I was admitted to the bar of the state of California in December of 2004 and remain an active member of the California bar.

3.      From October 2005 to the present, I have been employed by the United States Department of Justice as an Assistant U.S. Attorney prosecuting federal criminal cases.    From August of 2019 to the present, I have served as an Assistant U.S. Attorney in the Eastern District of California.    As an Assistant U.S. Attorney, my duties include the prosecution of persons charged with criminal violations of the laws of the United States.    Based on my training and experience, I am familiar with the criminal laws and procedures of the United States.    During my tenure in the U.S. Attorney's Office, I have become knowledgeable in the area of criminal law relating money laundering offenses.

---

1  Exhibit 5 has been removed from the version of the affidavit sworn on February 6, 2025.    Paragraph 55 has been updated.    A reference to Exhibit 5 has been removed from paragraph 57.

4.      In the course of my official duties, I have become familiar with the charges and evidence against Shawki Hammoud (Hammoud), in the case entitled <u>United States of America v. Shawki Hammoud</u>, Case Number 2:21-cr-0180-JAM, which arose from an investigation conducted by the Federal Bureau of Investigation (FBI), the Internal Revenue Service, Criminal Investigation (IRS-CI), and the U.S. Attorney's Office for the Eastern District of California (together, the "U.S. authorities").    The investigation revealed that Hammoud operated as a money launderer for proceeds of criminal activity.    As further discussed below, Hammoud also laundered funds represented to be the proceeds of crimes such as: wire fraud; computer fraud and abuse; and drug trafficking.

## SUMMARY OF THE FACTS OF THE CASE

5.      The information in this facts section of the affidavit is primarily provided by the case agents / investigators, and is consistent with my understanding of the facts.

### Background of the Investigation

6.      In 2013, the FBI and IRS-CI initiated an investigation into individuals ("the Subjects") who were contacting elderly individuals in California and elsewhere.    The Subjects contacted the elderly individuals by phone and told them falsely that they had won millions of dollars in a sweepstakes or lottery.    The Subjects told the elderly individuals they had to prepay taxes, fees, and/or insurance on their prize money before they could collect their winnings.    The elderly individuals mailed or wired their payments to bank accounts located in the United States controlled by the Subjects' co-conspirators.    Once the elderly individuals' monies were received, the Subjects' co-conspirators would primarily wire the money to overseas bank accounts.    This money was eventually routed to the Subjects minus a large money laundering fee.

7.      On February 7, 2018, the FBI and IRS-CI obtained a federal search warrant of the email account timswalls2012@gmail.com.    The FBI and IRS-CI agents learned about this email account from co-conspirator ("E.C."), during the investigation.    This email account was

controlled by A.G., who was one of the Subjects responsible for defrauding the elderly individuals as described above.    This email account was used to e-mail Hammoud to coordinate money laundering of fraud proceeds through bank accounts.    A review of the contents of the email account timswalls2012@gmail.com showed A.G. sending email messages to the email account rolexok5@gmail.com.    Those email messages included requests sent by A.G. for overseas bank account numbers where a co-conspirator of the scheme could wire the elderly victims' money after receiving it to further launder the victim fraud proceeds.

### Identification of Hammoud

8.      On May 11, 2018, the FBI and IRS-CI obtained a federal search warrant for the email account rolexok5@gmail.com.    The rolexok5 email account contained some hotel reservation confirmation messages in Hammoud's name.    A review of the contents of the email account rolexok5@gmail.com revealed the email account was used almost exclusively in furtherance of criminal activities and was permeated with such criminal activity.    This criminal activity included but not was not limited to discussions of the fraud and the related movement of fraudulently obtained proceeds.    Specifically, the content of the email account rolexok5@gmail.com contained email messages from A.G. and others requesting overseas bank account numbers to use to launder large sums of fraud proceeds around the world.    The content of the email account rolexok5@gmail.com also contained over 1,000 messages discussing the movement of money, which often included attached wire transfer slips.    Based on these wire slips and figures extrapolated from them, U.S. law enforcement agents estimate that Hammoud laundered, or attempted to launder, millions of dollars per year and around $100 million total, during a period of approximately 12 years.

9.      As described below in the *Email Affirmation Evidence* section of this Affidavit, the Apple iCloud account associated with the email account rolexok5@gmail.com contained photographs of various passports and other identification documents associated to Hammoud, as well as photos of Hammoud, which proved that Hammoud controlled the email account.    One photograph of an identification document is a passport issued by the Republic of Sierra Leone, in

the name of Shawki Hammoud, with an expiration date in March of 2021.    Another photograph of an identification document is a Residence Card issued by the Republic of Federal Iraq in the name of Chouki Hammoud, with an expiration date in November of 2014.

10.    In 2018, A.G. was indicted by a federal grand jury presiding in the Eastern District of California for his role in the lottery/sweepstakes scheme.    The charges against A.G. included wire fraud, mail fraud, and conspiracy to commit wire fraud and money laundering with enhanced penalties based on telemarketing conduct victimizing persons over age of.    In late 2018, at the request of U.S. law enforcement, the Colombian National Police arrested A.G. in Medellin, Colombia.

**Undercover Money Laundering Sting Operation Involving Hammoud**

11.    Starting in December 2019, after A.G. arrived in the U.S., the IRS-CI and FBI began an undercover money laundering operation that targeted Hammoud.    The operation was carried out through monitored and recorded telephone calls between A.G., whom Hammoud knew as "Frank," and Hammoud, as well as extensive chats on the WhatsApp and Signal messaging applications between Hammoud and an undercover IRS-CI special agent ("IRS-CI UCA") posing as "Frank.".

12.    The operation began with a December 18, 2019 monitored and recorded call between A.G., posing as Frank, claiming he was living in Toronto, and Hammoud.    Hammoud insisted on the phone call with Frank.    During that call, A.G. raised the prospect of more business related to the lottery fraud and future business involving "account takeovers."    The pair negotiated Hammoud's percentage fee for transactions related to the lottery funds and account takeover funds.

13.    Between December 18, 2019 and September 1, 2021, A.G. or the IRS-CI UCA (posing as Frank) and Hammoud arranged 15 money laundering transactions consisting of laundering of purported criminal proceeds, totaling over $725,000.    Through WhatsApp or Signal messages to Hammoud, the IRS-CI UCA was specific in the messages with Hammoud that the money that needed to be laundered came from an illegal source.    The illegal sources

4

included purported lottery fraud proceeds, business email compromise proceeds ("BEC schemes" or "account takeovers"),[2] or narcotics proceeds.

14.    During each money laundering transaction, the IRS-CI UCA requested from Hammoud either a U.S.-based bank account or an overseas bank account where he would wire the purported criminal proceeds to be laundered.    Upon this request, Hammoud would provide the necessary information, which included bank name, bank account name, routing number, accounting number, SWIFT number if the bank account was located overseas, and bank address. Hammoud would direct the IRS-CI UCA to send a photograph of the wire slip via WhatsApp or Signal showing the money had been wired to the bank account directed/identified by Hammoud. The IRS-CI UCA would provide a bank account located in the U.S. or overseas to Hammoud to wire the laundered criminal proceeds.    Hammoud would then send a wire to the directed bank account and provide a screenshot or photograph of the wire as proof that the money had been sent.    Hammoud charged the IRS-CI UCA between 30-35% of the dollar amount of the purported criminal proceeds that needed to be laundered.

15.    The following is a summary of the completed and/or attempted undercover money laundering sting transactions between the IRS-CI UCA and Hammoud.    All of the money sent was at the direction of Hammoud.

### December 18, 2019 – Count #1

16.    On December 18, 2019, the IRS-CI UCA wired Hammoud $27,000 of purported lottery fraud criminal proceeds from a U.S. law enforcement-controlled bank account held at Citibank to a bank account at JPMorgan Chase Bank (account ending in #1312), held in the name of Mercado the Ultimate Thingamajig, located in New Jersey.    On December 19, 2019, Hammoud wired the IRS-CI UCA $10,850 and $3,995.05, respectively, from Chase Bank

---

[2]  A business email compromise scheme is where criminals send an email message that appears to come from a trusted source making a request to send money to a bank account.    However, the directed bank account and the email message do not belong to the trusted source.    The bank account and email message really belongs to the criminal or someone working with the criminal, and is usually accompanied by a fraudulent request to send money.

(account ending in #1312), held in the name of Mercado the Ultimate Thingamajig to a U.S. law enforcement-controlled bank account located in Warsaw, Poland.

### May 14, 2020 – Count #2

17.     On May 14, 2020, the IRS-CI UCA wired Hammoud $99,316.47 of purported BEC scheme criminal proceeds obtained from DHL Shipping Company from a U.S. law enforcement-controlled bank account held at Safe Credit Union to a bank account at Standard Chartered Bank (account ending in #1938), held in the name of Deyong Trading Co. LTD., located in Hong Kong.   On May 19, 2020, Hammoud wired the IRS-CI UCA $64,550 from Standard Chartered Bank (account ending in #1938), held in the name of Deyong Trading Co. LTD., to a U.S. law enforcement-controlled bank account located in Toronto, Ontario.

### June 2, 2020 – Count #3

18.     On June 2, 2020, the IRS-CI UCA wired Hammoud $49,947.17 of purported BEC scheme criminal proceeds (and did not specify victim company with Hammoud) from a U.S. law enforcement-controlled bank account held at Safe Credit Union to a bank account at OCBC Wing Hang Bank (account ending in #2831), held in the name of Yiruifa Trade Co. LTD., located in Hong Kong.   On June 10, 2020, Hammoud wired the IRS-CI UCA $32,000 from Bank of China (account ending in #0906), held in the name of HKWPW Trading Co., LTD., located in Hong Kong to a U.S. law enforcement controlled bank account located in Toronto, Ontario.   The bank located in Toronto, Ontario rejected the incoming wire due to potential fraud and the money is currently frozen in the Bank of China account held in the name of HKWPW Trading Co., LTD.

### December 7, 2020 – Count #4

19.     On December 7, 2020, the IRS-CI UCA wired HAMOUD $60,000 of purported BEC scheme criminal proceeds obtained from Nike from a U.S. law enforcement-controlled bank account held at Safe Credit Union to a bank account at OCBC Wing Hang Bank (account ending in #3831), held in the name of Golden Collection LTD., located in Hong Kong.   On

December 11, 2020, Hammoud wired the IRS-CI UCA $49,000[3] from Santander Bank Polska (act ending in #7522), held in the name of Omnitex International SP. Z.O.O., located in Warsaw, Poland to a U.S. law enforcement-controlled bank account held in Madison, Indiana.   The bank located in Madison, Indiana rejected the incoming wire due to potential fraud and the money was returned to the Santander Bank Polska (account ending in #7522), held in the name of Omnitex International SP. Z.O.O., located in Warsaw, Poland.

### December 30, 2020 – Count #5

20.    On December 30, 2020, the IRS-CI UCA wired Hammoud $70,000 of purported BEC scheme criminal proceeds from Nike from a U.S. law enforcement-controlled bank account held at Safe Credit Union to a shell bank account at Bank of China (account ending in #2425), held in the name of Oneworld Intl Industry Co., LTD., located in Hong Kong.   On January 4, 2020, Hammoud wired the IRS-CI UCA $56,000[4] from Bank of China (account ending in #2425), held in the name of Oneworld Intl Industry Co., LTD., located in Hong Kong to a U.S. law enforcement-controlled bank account located in Glendale, California.

### January 14, 2021 – Count #6

21.    On January 14, 2021, the IRS-CI UCA wired Hammoud $30,000 of purported BEC scheme criminal proceeds obtained from Mercedes Benz from a U.S. law enforcement controlled bank account held at Safe Credit Union to a bank account at Bank of China (account ending in #2425), held in the name of Oneworld Intl Industry Co., LTD., located in Hong Kong. On January 15, 2021, Hammoud wired the IRS-CI UCA $20,000[5] from Bank of China (account ending in #2425), held in the name of Oneworld Intl Industry Co., LTD., located in Hong Kong to a U.S. law enforcement controlled bank account located in Glendale, California.

---

[3] The wire in the amount of $49,000 from Hammoud included an extra $10,000 to help cover the money frozen in the bank account held in Hong Kong as identified in Count #3.
[4] The wire in the amount of $56,000 from Hammoud included an extra $10,500 to help cover the money frozen in the bank account held in Hong Kong as identified in Count #3.

[5] The wire in the amount of $20,000 from Hammoud included an extra $500 to help cover the money frozen in the bank account held in Hong Kong as identified in Count #3.

### February 2, 2021 – Count #7

22.     On February 2, 2021, the IRS-CI UCA wired Hammoud $35,000 of purported BEC scheme criminal proceeds obtained from Mercedes Benz from a U.S. law enforcement-controlled bank account held at Safe Credit Union to a bank account at mBank SA (account ending in #1002), held in the name of Alpha International SP Z.O.O., located in Warsaw, Poland. On February 4, 2021, Hammoud wired the IRS-CI UCA $17,800 Euros ($20,728.03 USD) from the bank account at mBank SA (account ending in #1002), held in the name of Alpha International SP Z.O.O. located in Warsaw, Poland to a U.S. law enforcement-controlled bank account located in Glendale, California.

### February 9, 2021 – Count #8

23.     On February 9, 2021, the IRS-CI UCA wired Hammoud $40,000 of purported BEC scheme criminal proceeds obtained from FedEx from a U.S. law enforcement-controlled bank account held at Safe Credit Union to a bank account at PKO Bank Polski S.V. (account ending in #4877), held in the name of Cepano SP Z.O.O., located in Warsaw, Poland.   On February 12, 2021, the PKO Bank Polski S.V flagged the incoming wire as fraud.   On February 12, 2021, the IRS-CI UCA recalled the wire and the money was returned to the U.S. law enforcement-controlled bank account held at Safe Credit Union.

### February 23, 2021 – Count #9

24.     On February 23, 2021, the IRS-CI UCA wired Hammoud $40,000 of purported BEC scheme criminal proceeds obtained from FedEx from a U.S. law enforcement-controlled bank account held at Safe Credit Union to a bank account held at JPMorgan Chase Bank (account ending in #0669), held in the name of Santiago Almighty, Inc., located in Newark, New Jersey.   On March 3, 2021, Hammoud wired the IRS-CI UCA $24,000 from a bank account at Wells Fargo Bank (account ending in #7601), held in the name of Morales Primitive, Inc., located in Deltona, Florida to a U.S. law enforcement-controlled bank account located in Glendale, California.   However, the wire did not go through because Hammoud used the wrong bank account number (it was off by one digit) for the covert bank account held at JPMorgan

Chase Bank located in Glendale, California.

### March 22, 2021 – Count #10

25.    On March 22, 2021, the IRS-CI UCA wired Hammoud $50,000 of purported BEC scheme criminal proceeds (and did not specify victim company with Hammoud) from a U.S. law enforcement-controlled bank account held at Safe Credit Union to a bank account held at Wells Fargo Bank (act ending in #8806), held in the name of Leonardo Likewise, Inc., located in Perth Amboy, New Jersey.    On March 26, 2021, Hammoud wired the IRS-CI UCA $30,000 from Citizens Bank (account ending in #5153), held in the name of Contreras Count On, Inc., to a U.S. law enforcement-controlled bank account located in Glendale, California.

### July 7, 2021 – Count #11

26.    On July 7, 2021, the IRS-CI UCA wired Hammoud $40,000 of purported BEC scheme criminal proceeds from American Airlines from a U.S. law enforcement-controlled bank account held at Safe Credit Union to a bank account held at TD Bank (account ending in #7448), held in the name of Grullon Giant Selection, Inc., located in Bronx, New York.    Hammoud provided the IRS-CI UCA the wrong TD Bank account number for Grullon Giant Selection, Inc., and the money was returned to the U.S. law enforcement-controlled bank account held at Safe Credit Union.

### July 12, 2021 – Count #12

27.    On July 12, 2021, the IRS-CI UCA wired Hammoud $40,000 of purported BEC scheme criminal proceeds from American Airlines from a U.S. law enforcement-controlled bank account held at Safe Credit Union to a bank account held at TD Bank (account ending in #7443), held in the name of Grullon Giant Selection, Inc., located in Bronx, New York.    On July 13, 2021, Hammoud wired the IRS-CI UCA $27,000[6] from the TD Bank (account ending in #7443), held in the name of Grullon Giant Selection, Inc., to a U.S. law enforcement-controlled bank account located in Glendale, California.

---

[6] Hammoud included an additional $3,000 because he took out too much in money laundering fees in Count #11.

**September 1, 2021 – Count #13**

28.     On September 1, 2021, the IRS-CI UCA wired Hammoud $49,996.14 of purported BEC scheme criminal proceeds from Mercedes Benz from a U.S. law enforcement-controlled bank account held at Safe Credit Union to a bank account held at TD Bank (account ending in #7443), held in the name of Grullon Giant Selection, Inc., located in Bronx, New York. On September 10, 2021, Hammoud sent the IRS-CI UCA a screenshot via Signal showing the money wired on September 1, 2021 had been received, but TD Bank was holding the money due to fraud.   On September 10, 2021, the IRS-CI UCA recalled the wire, and the $49,996.14 was returned to the U.S. law enforcement-controlled bank account held at Safe Credit Union.

**April 20, 2021 – Count #14**

29.     On April 20, 2021, the IRS-CI UCA wired Hammoud $50,000 of purported drug trafficking proceeds from a U.S. law enforcement-controlled bank account held at Safe Credit Union to a shell bank account held at Citibank (account ending in #1670), held in the name of Tavarez Tidy and Tough, Inc., located in Rockaway Beach, Florida.[7]   On June 22, 2021, Hammoud wired the IRS-CI UCA $27,000 from Bank of America (account ending in #1219), held in the name of Torres Top Trader, Inc., to a U.S. law enforcement-controlled bank account located in Glendale, California.

**July 29, 2021 – Count #15**

30.     On July 29, 2021, the IRS-CI UCA wired Hammoud $44,993 of purported drug trafficking proceeds from a U.S. law enforcement-controlled bank account held at Safe Credit Union to a shell bank account held at TD Bank (account ending in #7443), held in the name of Grullon Giant Selection, Inc., located in Bronx, New York.   On July 30, 2021, Hammoud wired the IRS-CI UCA $27,000 from the TD Bank (account ending in #7443), held in the name of Grullon Giant Selection, Inc., to a U.S. law enforcement-controlled bank account located in Glendale, California.

---

[7] Citibank froze the bank account for approximately two months before issuing a check to the account holder with the ending balance.

## Email Attribution Evidence Identifying Hammoud as Perpetrator of Money Laundering Activities

31.    A.G., who has pleaded guilty in a related investigation, previously identified the rolexok5@gmail.com account as the account in which he communicated with Hammoud in order to launder fraudulently obtained proceeds.    Investigators lawfully obtained the content of the rolexok5@gmail.com account through a search warrant, and the content within the account corroborated A.G.'s statements, as investigators identified numerous emails between A.G. and Hammoud.

32.    A second cooperating defendant ("A.A."), who conspired with A.G. and pleaded guilty in a related investigation, told investigators that A.G. used one person to control all of the "banking" activities related to the lottery scheme.    A.A. identified the money launderer as "CHOKES" or "CHOKEY" and said that he had access to shell bank accounts all over the world. A.A. believed that CHOKES/CHOKEY lived in Nigeria or Europe.

33.    A third cooperating defendant ("F.A."), who conspired with A.G. and also pleaded guilty in a related investigation, told investigators that A.G. introduced F.A. to "Chouki."    F.A. recalled communicating with "Chouki" to launder criminal proceeds via two different Nigerian telephone numbers, two different email accounts and later via WhatsApp. Investigators' review of Hammoud's iCloud account, as further described below, revealed that he previously resided in Nigeria.    F.A. said that "Chouki" traveled back and forth between Nigeria and Lebanon.    F.A. said "Chouki" had bank accounts all over the world to launder money, including in Cypress, Malaysia, Greece, China, and the United States.    F.A.. said "Chouki" charged a 45% fee to launder the money through bank accounts in the United States.    F.A. used "Chouki's" services for 7-8 years.

34.    Investigators' review of the rolexok5@gmail.com account corroborated A.A.'s and F.A.'s statements as well, showing that Hammoud, using the rolexok5@gmail.com email address, facilitated money laundering through shell accounts around the world, and that Hammoud has location ties via log-ins and family photographs to Nigeria, the United Kingdom

and Lebanon, and that Hammoud uses various aliases including "CHAUKI," "CHOKI," "CHOWKEY," "CHAWKI," "CHAWI," "CHOUKI," "SHAWKI," etc.

35.    In addition to the cooperating defendants' statements regarding Hammoud described above, investigators discovered additional evidence showing that Hammoud controlled the email account rolexok5@gmail.com and uses various spellings of his name. This evidence includes, but is not limited to, the following:

    a.  The account was established with Google with the name "Joe Hammoud";

    b.  An email message sent from Apple Inc. to the rolexok5@gmail.com account stated, in part "Your Apple ID (rolexok5@gmail.com) was used to sign in to Face Time and Message on an iPhone 5s named "Chauki"";

    c.  The rolexok5@gmail.com account received numerous email messages addressed to "Chauki," and/or "Chauki Hammoud," including:

        1.  From other known coconspirators, such as a message with the subject "Fwd: 35k chauki," and, from another coconspirator's account, including an attachment titled "chauki 5k";

        2.  Reservation confirmations including one made through Booking.com at the Swissotel The Bosphorus Istanbul in the name of "Chauki Hammoud (rolexok5@gmail.com)";

        3.  A "Thank you" email from "Shades" restaurant in Dubai reading in part, "Dear Chauki Hammoud";

        4.  From the company Truecaller stating in part "Hi Chauki, someone just searched for you on Truecaller";

        5.  From the music service company "Anghami" (launched in Lebanon in 2012) addressed to "Chauki."

    d.  The rolexok5@gmail.com account received many other email messages to Hammoud spelled slightly differently, including emails from Middle East Airlines addressed to "Mr. Chouki Hamoud" and emails from known coconspirators

addressed to, or including an attachment titled "chaouki";

e.  The rolexok5@gmail.com account contained an attachment in an email message originally from Zenith Bank to rolexok5@gmail.com showing an indemnity agreement with Zenith Bank PLC signed by "SHAWKI HAMMOUD" on March 21, 2017; and

f.  The rolexok5@gmail.com account contained an email message from an engineer offering a bid for carpentry work and including an attachment titled "CHAWKI HAMMOUD QUOTATION REV 1 client FINAL".

36.    As identified above, the rolexok5@gmail.com account is also used as Hammoud's Apple ID.    Investigators lawfully obtained the content of the Apple iCloud account associated with user ID rolexok5@gmail.com.    A review of the content provided by Apple revealed copies of Hammoud's Sierra Leone passports, an Iraq/Kurdistan Immigration ID Card in the name of Chouki HAMOUD that contained a picture of Hammoud, Iraqi Kurdistan Region Directorate of Domestic Companies documentation showing a business owned 50% by "Chouki Ali Hamoud," a copy of Hammoud's birth certificate and names of his family members. The content of the Apple iCloud account associated with the rolexok5@gmail.com account also included hundreds of images and videos with audio depicting Hammoud and his family members as well as evidence of the money laundering activities described herein, including images and videos showing bank account transactions from accounts held in various countries around the world.

### Cell Phone Attribution Evidence Identifying Hammoud as Perpetrator of Money Laundering Activities

37.    Cooperating defendant A.G. provided law enforcement with the Lebanese telephone contact number A.G. historically used to communicate with Hammoud.    A.G. also provided law enforcement with the type of information that would typically be used by A.G. to communicate via text with Hammoud.    For example, A.G. told investigators that when A.G. needed a new bank account to launder victim proceeds, A.G. would contact Hammoud and say,

"Can I get some new details?"    A.G. said this request meant A.G. wanted Hammoud to provide A.G. with banking information that could be used to receive victim proceeds.

38.    A.G. and cooperating defendant F.A. separately told investigators that A.G. met Hammoud through a friend named "Tony" who was involved in financial fraud activities and used Hammoud to launder money for him.    Prior to investigators initiating communication with Hammoud, cooperating defendant F.A. said he used the name "Frank" with Hammoud, but the name "Tony" is preferred.    F.A said if investigators use the name "Frank" with Hammoud, they should "make sure to tell Hammoud that "Tony" referred "Frank."    On December 17, 2019, the date of the first law enforcement contact with Hammoud, the text message sent read "Hey brother frank Toronto got big business starting neeed (sic) some details" One minute later, a response came reading, "How is Tomy (sic)."

39.    The number provided by A.G. (Hammoud's known number) that received the text called the investigators' phone number three minutes later, but the investigators did not answer the phone.    Hammoud's known number then provided a Nigerian telephone number for A.G. to contact.    A.G. had previously told the investigators that he spoke with Hammoud using both a Lebanese and a Nigerian telephone number.    Seventeen minutes after the initial communication with Hammoud's known telephone number, the investigators received the "details" requested in the form of a bank name, account name, routing number, account number and bank address. This information came to the investigators via the Nigerian telephone number provided to A.G. by Hammoud's known Lebanese telephone number.

40.    In reviewing the WhatsApp communications between A.G. and Hammoud throughout the undercover operation, investigators observed that the WhatsApp number +23470543333333 used by Hammoud featured a profile photo of Al Pacino from the movie Scarface.    In reviewing the content of the iCloud account associated with Hammoud's rolexok5@gmail.com account, investigators observed numerous photos and quotations associated with Al Pacino and the movie Scarface, and more significantly, a photograph of Hammoud sitting in a throne-like chair in front of a picture of Al Pacino from the movie

Scarface.

41.    Throughout the WhatsApp text communications and the audio communications
between A.G. and Hammoud, numerous references to their previous money laundering business
activities together were used by both parties.    For example, they continued using the same code
words they had used previously such as the word "details" (meaning banking information).
Both A.G. and Hammoud also referred to percentage fees used for wire transactions and how
those fees had changed from their prior business together.    A.G. and Hammoud exchanged
photos of wire slips as they had done in dozens of previous transactions.    A.G. and Hammoud
frequently greeted each other with the same "Broda" and signed off with the prayer emoji as they
had done in the past.    During one communication in June 2020 regarding A.G.'s money being
frozen in an account, Hammoud responded in part "ur my broda Longest time" referring to the
fact that A.G. and Hammoud had done business together for approximately ten years.

42.    As described previously in this affidavit, cooperating defendant A.G. participated
in recorded audio conversations with Hammoud to arrange the subject money laundering
transactions.    Investigators have listened to these recordings with the cooperating defendant and
the audio recordings of Hammoud obtained from Hammoud's iCloud account and believe the
voice in the audio from both sets of recordings is the same person.

## PROCEDURAL HISTORY OF THE CASE

### The Charging Process

43.    Under the federal law of the United States, a criminal prosecution is commenced
when a grand jury files an Indictment.    Institutionally, a grand jury, though an arm of the court,
is an independent body composed of private citizens—not less than 16 and not more than 23
people—whom the U.S. District Court selects at random from the residents of the judicial district
in which the court resides.    The purpose of the grand jury is to review the evidence of crimes
presented to it by U.S. law enforcement authorities.    After independently reviewing this
evidence, each member of the grand jury must determine whether there is sufficient evidence to
believe that a crime has been committed and that a particular person committed that crime.    If at

least 12 grand jurors find that the evidence they have reviewed is sufficient to believe that a particular person committed the crime, the grand jury may return an Indictment.    An Indictment is a formal written accusation that charges the particular person, now a defendant, with a crime, and identifies the specific laws that the defendant is accused of violating.

44.    After a grand jury returns the Indictment, a warrant for the defendant's arrest may be issued at the direction of a United States District Judge or Magistrate Judge.    Under United States law, the arrest warrant is simply a document authorizing a law enforcement officer to take physical custody of a defendant and bring him to court to answer the charges contained in the Indictment.    The type of detail on the face of an arrest warrant regarding the charges against a defendant can vary by district.    The fact that an arrest warrant summarizes the outstanding charges in words, provides only some of the relevant statutory citations, or merely references the Indictment does not alter the validity of the arrest warrant to authorize a defendant's arrest on all of the charges contained in the corresponding Indictment.    Under United States law, it is the Indictment, and not an arrest warrant, that controls the specific number and type of offenses with which the defendant is charged.

## The Charges and Pertinent U.S. Law

45.    On September 23, 2021, a federal grand jury sitting in the Eastern District of California returned and filed an Indictment against Shawki Hammoud, charging him with 15 counts of money laundering. The Indictment charges Hammoud with the following offenses:

Count One:                         money laundering & attempt to commit a financial transaction involving property represented to be proceeds of wire fraud, in violation of Title 18, United States Code, Sections 1956(a)(3)(B) and 2, which carries a maximum penalty of 20 years in prison.

Counts Two through Thirteen: money laundering & attempt to commit a financial transaction involving property represented to be proceeds of computer fraud and abuse, in violation of Title 18, United States Code, Sections 1956(a)(3)(B) and 2, which carries a maximum penalty of 20 years

in prison.

Counts Fourteen and Fifteen: money laundering & attempt to commit a financial transaction

involving property represented to be proceeds of drug trafficking,

in violation of Title 18, United States Code, Sections

1956(a)(3)(B) and 2, which carries a maximum penalty of 20 years

in prison.

46.     This Indictment was filed with the U.S. District Court for the Eastern District of California.    It is the practice of the U.S. District Court for the Eastern District of California to retain the original Indictment and file it with the records of the court.    Therefore, I have obtained a certified copy of the Indictment from the clerk of the court and have attached it to this affidavit as **Exhibit 1**.

47.     On September 23, 2021, based on the filing of the Indictment, the Honorable Deborah Barnes, United States Magistrate Judge of the Eastern District of California, issued a warrant for Hammoud's arrest.    The arrest warrant remains valid and executable to apprehend Hammoud on the charges set forth in the Indictment.    It is the practice of the U.S. District Court for the Eastern District of California to retain the original arrest warrant and file it with the records of the court. Therefore, I have obtained from the clerk of the court a certified copy of the arrest warrant for Hammoud and have attached it to this affidavit as **Exhibit 2**.

48.     Each count of the Indictment charges a separate offense.    Each offense is punishable under a statute that: was the duly enacted law of the United States at the time the offense was committed; was the duly enacted law of the United States at the time the Indictment was filed; and is currently in effect.

49.     Each offense is a felony offense punishable under U.S. law by more than one year of imprisonment. I have attached copies of the pertinent sections of these statutes and the applicable penalty provisions to this affidavit as **Exhibit 3**.

### **Elements for Counts One Through Fifteen**

50.     Counts One through Fifteen of the Indictment charge Hammoud with money

laundering and attempt to launder money.    To satisfy its burden of proof and convict Hammoud for those counts, the United States must establish the following elements:

      a.   First, Hammoud knowingly conducted, or attempted to conduct, a financial transaction.

      b.   Second, the financial transaction involved property represented by a law enforcement officer, or by another person at the direction of, or with the approval of, a Federal official authorized to investigate or prosecute violations of § 1956, to be the proceeds of specified unlawful activity.

      c.   Third, Hammoud believed that proceeds were the proceeds of specified unlawful activity.    Specified unlawful activity includes: wire fraud, in violation of 18 U.S.C. § 1343, (18 U.S.C. §§ 1956(c)(7)(A)); computer fraud and abuse, in violation of 18 U.S.C. § 1030, (18 U.S.C. § 1956(c)(7)(D)); and controlled substance offenses (18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(D)).

      d.   Fourth, Hammoud acted with the intent to conceal or disguise the nature, location, source, ownership, or control of property he believed to be the proceeds of specified unlawful activity.

      e.   To establish attempt to commit money laundering, the government would need to prove that Hammoud intended to commit the act of money laundering (as defined in the four elements above) and did something that was a substantial step toward committing the crime.

      51.   The maximum penalty for the offense of money laundering (or attempted money laundering) is 20 years of imprisonment, a fine of U.S. $250,000, and a three-year term of supervised release.

      52.   Title 18, United States Code, Section 2, as charged in Counts One through Fifteen of the Indictment, provides that whoever commands, procures, assists in, or causes the commission of a crime shall be held accountable and punished in the same manner as the principal, or the person who actually carried out the task.    This means that the guilt of the

defendant may also be proved even if he did not personally perform every act involved in the commission of the crime charged.    The law recognizes that, ordinarily, anything a person can do for himself may also be accomplished through direction of another person as an agent, or by acting together with, or under the direction of, another person or persons in a joint effort.    So, if the acts or conduct of an agent, employee or other associate of the defendant were willfully directed or authorized by the defendant, or if the defendant aided and abetted another person by willfully joining together with that person in the commission of a crime, then the law holds the defendant responsible for the conduct of that other person just as though the defendant had engaged in such conduct himself.    Citing the statute does not constitute a separate charge against the defendant; rather it provides an additional theory of criminal liability under which the defendant may be found guilty at trial.

### Summary of the Evidence for Counts One through Fifteen

53.    The government will meet the elements by showing that: (1) Hammoud knowingly conducted, or attempted to conduct, financial transactions, as set forth above; (2) the financial transactions involved property represented by a law enforcement officer, or someone working at the officer's direction, to be proceeds of specified unlawful activity, namely wire and computer fraud and controlled substances offenses; (3) Hammoud believed the property was proceeds of specified unlawful activity, based upon the communications made by the officer and at the officer's direction; and (4) Hammoud acted with the intent to conceal or disguise the nature, location, source, ownership, or control of property by routing them through unrelated business accounts.

54.    The United States will prove its case against Hammoud through various types of evidence, including financial records, witness testimony, law enforcement agent testimony, undercover law enforcement agent testimony, business records, audio recordings of telephone calls, and screenshots of messages exchanged via smart phone.

## IDENTIFICATION INFORMATION FOR HAMMOUD

55.     Hammoud is a citizen of the Republic of Lebanon and was born on May 26, 1969. He is a Caucasian male with brown hair.    A photograph of the biographical page of Hammoud's Sierra Leone passport retrieved from his iCloud account is attached as an Exhibit 4-1.    Selected photographs from Hammoud's iCloud account are attached as Exhibits 4-2 and 4-3.    The investigators have compared the information gathered about Hammoud during the investigation, and they believe that is the same person charged in the Indictment.

## SURRENDER OF PROPERTY

56.     Pursuant to Article 16 of the Annex to the U.S.—UK Extradition Instrument, it is requested that any items relevant to the charged offenses and found in Hammoud's possession at the time of his arrest be delivered to the United States if they are found to be extraditable.

## CONCLUSION

57.     The following attachments support this request for the extradition of Hammoud:

a.  **Exhibit 1** is a certified copy of the Indictment.

b.  **Exhibit 2** is a certified copy of the arrest warrant against Hammoud.

c.  **Exhibit 3** is a copy of the pertinent sections of the following statutes and their penalties:

   1.  Title 18, U.S. Code, Section 1956, including relevant sub-sections;

   2.  Title 18, U.S. Code, Section 2;

   3.  Title 18, U.S. Code Section 1343;

   4.  Title 18, U.S. Code Section 1030;

   5.  Title 18, U.S. Code Section 1961(1));

   6.  Title 21, U.S. Code Section 982; and

   7.  Title 21, U.S. Code Section 853(p).

d.  **Exhibit 4-1** is a photograph of the biographical page of Hammoud's Republic of Sierra Leone page, showing an expiration date in March of 2021, from Hammoud's iCloud account.

e. **Exhibit 4-2** is a photograph of Ham[m]oud's Iraqi Residence Card, showing an expiration date in 2014, from Hammoud's iCloud account.

f. **Exhibit 4-3** is a photograph from Hammoud's iCloud account showing Hammoud sitting in a throne-like chair in front of a picture of Al Pacino from the movie Scarface.

58.     Based on my review of the government's evidence in this case, I attest that the evidence indicates that Hammoud is guilty of the offenses charged in the Indictment.

Christina M. McCall
Assistant U.S. Attorney
Eastern District of California


SIGNED AND SUBSCRIBED TO BEFORE ME
THIS ___10___ DAY OF FEBRUARY, 2025


HON. CHI SOO KIM
U.S. Magistrate Judge
Eastern District of California

# Exhibit 1

1 | PHILLIP A. TALBERT
Acting United States Attorney
2 | NIRAV K. DESAI
CHRISTINA McCALL
3 | Assistant United States Attorneys
501 I Street, Suite 10-100
4 | Sacramento, CA 95814
Telephone: (916) 554-2700
5 | Facsimile: (916) 554-2900

6 | Attorneys for Plaintiff
United States of America

7

**FILED**

Sep 23, 2021

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

# SEALED

8 || IN THE UNITED STATES DISTRICT COURT

9 || EASTERN DISTRICT OF CALIFORNIA

10 | UNITED STATES OF AMERICA,

CASE NO.   2:21-cr-0180 MCE

11 |                    Plaintiff,

18 U.S.C. § 1956(a)(3)(B) – Money Laundering &
Attempt (15 counts); 18 U.S.C. § 982(a)(1) –
Criminal Forfeiture

12 |            v.

13 | SHAWKI HAMMOUD,
14 | aka Chouki Hammoud,
aka Chouki Hamoud,

15 |                    Defendant.

I hereby certify that the annexed
instrument is a true and correct copy of
the original on file in my office.
ATTEST: KEITH HOLLAND

Clerk, U. S. District Court
Eastern District of California

By_____
                              Deputy Clerk

Dated____1/3/25____

16

17 ||                    I N D I C T M E N T

18 | COUNT ONE: [18 U.S.C. § 1956(a)(3)(B) – Money Laundering & Attempt]

19 |       The Grand Jury charges: T H A T

20 |                         SHAWKI HAMMOUD,
aka Chouki Hammoud,
21 |                         aka Chouki Hamoud,

22 | defendant herein, on or about the date set forth in the table below, in the County of Sacramento, State

23 | and Eastern District of California, and elsewhere, with the intent to conceal and disguise the nature,

24 | location, source, ownership, and control of property believed to be the proceeds of specified unlawful

25 | activity, did knowingly conduct and attempt to conduct a financial transaction affecting interstate or

26 | foreign commerce involving property represented by a law enforcement officer and by Person 1, who

27 | acted at the direction of and with the approval of an authorized federal official, to be proceeds of

28 | specified unlawful activity, to wit:  wire fraud, in violation to Title 18, United States Code,

INDICTMENT

1

1 | Section 1343.

| COUNT | DATE (ON OR ABOUT) | AMOUNT (APPROX.) | TRANSACTION/ATTEMPTED TRANSACTION |
|---|---|---|---|
| 1 | Dec. 18, 2019 | $27,000 | Wire transfer from account held at Citibank, N.A. (account ending 2425) to account held at JP Morgan Chase Bank, N.A. (account ending 1312), for beneficiary:  Mercado the Ultimate Thingamajig Inc. |

All in violation of Title 18, United States Code, Sections 1956(a)(3)(B) and 2.

COUNTS TWO THROUGH THIRTEEN: [18 U.S.C. § 1956(a)(3)(B) – Money Laundering & Attempt]

The Grand Jury further charges: T H A T ·

SHAWKI HAMMOUD,
aka Chouki Hammoud,
aka Chouki Hamoud,

defendant herein, on or about the dates set forth in the table below, in the County of Sacramento, State and Eastern District of California, and elsewhere, with the intent to conceal and disguise the nature, location, source, ownership, and control of property believed to be the proceeds of specified unlawful activity, did knowingly conduct and attempt to conduct a financial transaction affecting interstate or foreign commerce involving property represented by a law enforcement officer and by Person 1, who acted at the direction of and with the approval of an authorized federal official, to be proceeds of specified unlawful activity, to wit:  computer fraud and abuse, in violation of Title 18, United States Code, Section 1030.

INDICTMENT                                    2

| COUNT | DATE (ON OR ABOUT) | AMOUNT (APPROX.) | TRANSACTION/ATTEMPTED TRANSACTION |
|---|---|---|---|
| 2 | May 14, 2020 | $99,316.47 | Wire transfer from account held at Safe Credit Union (account ending 1509) to account at Standard Chartered Bank (Hong Kong) Limited (account ending 1938), for beneficiary: Deyong Trading Co., Limited |
| 3 | June 2, 2020 | $49,947.17 | Wire transfer from account held at Safe Credit Union (account ending 1509) to account held at OCBC Wing Hang Bank Limited (account ending 2831), for beneficiary: Yiruifa Trade Co. Ltd. |
| 4 | Dec. 7, 2020 | $60,000 | Wire transfer from account held at Safe Credit Union (account ending 1509) to account held at OCBC Wing Hang Bank HK (account ending 3831), for beneficiary: Golden Collection Ltd. |
| 5 | Dec. 30, 2020 | $70,000 | Wire transfer from account held at Safe Credit Union (account ending 1509) to account held at Bank of China HK (account ending 2425), for beneficiary: Oneworld Intl Industry Co., Ltd. |
| 6 | Jan. 14, 2021 | $30,000 | Wire transfer from account held at Safe Credit Union (account ending 1509) to account held at Bank of China HK (account ending 2425), for beneficiary: Oneworld Intl Industry Co., Ltd. |
| 7 | Feb. 2, 2021 | $35,000 | Wire transfer from account held at Safe Credit Union (account ending 1509) to account held at mBank, S.A. (account ending 1002), for beneficiary: Alpha International SP.Z O.O. |
| 8 | Feb. 9, 2021 | $40,000 | Wire transfer from account held at Safe Credit Union (account ending 1509) to account held at PKO Bank Polski S.A. (account ending 4877), for beneficiary: Cepano SP.Z O.O. |
| 9 | Feb. 23, 2021 | $40,000 | Wire transfer from account held at Safe Credit Union (account ending 1509) to account held at JP Morgan Chase Bank (account ending 0669), for beneficiary: Santiago Almighty, Inc. |
| 10 | Mar. 22, 2021 | $50,000 | Wire transfer from account held at Safe Credit Union (account ending 1509) to account held at Wells Fargo Bank (account ending 8806), for beneficiary: Leonardo Likewise, Inc. |
| 11 | July 7, 2021 | $40,000 | Wire transfer from account held at Safe Credit Union (account ending 1509) to account held at TD Bank (account ending 7448), for beneficiary: Grullon Giant Selection Inc. |

| 12 | July 12, 2021 | $40,000 | Wire transfer from account held at Safe Credit Union (account ending 1509) to account held at TD Bank (account ending 7443), for beneficiary: Grullon Giant Selection Inc. |
| 13 | Sept. 1, 2021 | $49,996.14 | Wire transfer from account held at Safe Credit Union (account ending 1509) to account held at TD Bank (account ending 7443), for beneficiary: Grullon Giant Selection Inc. |

All in violation of Title 18, United States Code, Sections 1956(a)(3)(B) and 2.

COUNTS FOURTEEN AND FIFTEEN: [18 U.S.C. § 1956(a)(3)(B) – Money Laundering and Attempt]

The Grand Jury further charges: T H A T

SHAWKI HAMMOUD,
aka Chouki Hammoud,
aka Chouki Hamoud,

defendant herein, on or about the dates set forth in the table below, in the County of Sacramento, State and Eastern District of California, and elsewhere, with the intent to conceal and disguise the nature, location, source, ownership, and control of property believed to be the proceeds of specified unlawful activity, did knowingly conduct and attempt to conduct a financial transaction affecting interstate or foreign commerce involving property represented by a law enforcement officer to be proceeds of specified unlawful activity, to wit: drug trafficking, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

| COUNT | DATE (ON OR ABOUT) | AMOUNT (APPROX.) | TRANSACTION/ATTEMPTED TRANSACTION |
| --- | --- | --- | --- |
| 14 | Apr. 20, 2021 | $50,000 | Wire transfer from account held at Safe Credit Union (account ending 1509) to account in name of Tavarez Tidy and Tough Inc. held at Citibank (account ending 1670) |
| 15 | July 29, 2021 | $44,993 | Wire transfer from account held at Safe Credit Union (account ending 1509) to account in name of Grullon Giant Selection, Inc. held at TD Bank (account ending 7443) |

All in violation of Title 18, United States Code, Sections 1956(a)(3)(B) and 2.

FORFEITURE ALLEGATION: [18 U.S.C. § 982(a)(1) – Criminal Forfeiture]

1.    Upon conviction of one or more of the offenses alleged in Counts One through Fifteen of this Indictment, defendant SHAWKI HAMMOUD shall forfeit to the United States pursuant to Title 18,

INDICTMENT                                                    4

1  United States Code, Section 982(a)(1), any property, real or personal, involved in such offenses, and any

2  property traceable to such property, including but not limited to the following:

3      a.      A sum of money equal to the amount of money involved in the offenses, for which

4  defendant is convicted.

5      2.      If any property subject to forfeiture, as a result of the offenses alleged in Counts One

6  through Fifteen of this Indictment, for which defendant is convicted:

7          a.      cannot be located upon the exercise of due diligence;

8          b.      has been transferred or sold to, or deposited with, a third party;

9          c.      has been placed beyond the jurisdiction of the Court;

10         d.      has been substantially diminished in value; or

11         e.      has been commingled with other property which cannot be divided without

12                 difficulty;

13  it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b)(1),

14  incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of

15  defendant, up to the value of the property subject to forfeiture.

16

17                                              A TRUE BILL.

18                                              /s/ Signature on file w/AUSA

19

20                                              _____

21  PHILLIP A. TALBERT                          FOREPERSON
    Acting United States Attorney
22

23

24

25

26

27

28

No. _ _ _ _ _ _ _ _ _ _                                      2:21-cr-0180 MCE

## UNITED STATES DISTRICT COURT

*Eastern District of California*

*Criminal Division*

### THE UNITED STATES OF AMERICA
*vs.*

SHAWKI HAMMOUD,
aka Chouki Hammoud
aka Chouki Hamoud

## INDICTMENT

**VIOLATION(S):**   18 U.S.C. § 1956(a)(3)(B) – Money Laundering and Attempt (15 counts);
18 U.S.C. § 982(a)(1) – Criminal Forfeiture

*A true bill,*          **/s/ Signature on file w/AUSA**

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
*Foreman.*

*Filed in open court this* _ _ _ _ 23rd _ _ _ _ _ _ _ *day*

*of* _ _ _ September _ _ _ _ , *A.D. 20* _21_ _ _

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ PBuzo _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
*Clerk.*

*Bail, $* _ _ _ _ _ _ _ *No Bail Warrant Pending Hearing* _ _ _ _ _

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

**United States v. Shawki Hammoud**
**Penalties for Indictment**

**Defendant**
**SHAWKI HAMMOUD**
aka Chouki Hammoud,
aka Chouki Hamoud

2:21-cr-0180 MCE

**COUNTS 1-15:**

VIOLATION:                18 U.S.C. § 1956(a)(3)(B) – Money Laundering and Attempted
                          Money Laundering

PENALTIES (each count):   Up to 20 years in prison; or

                          Fine of up to $250,000; or

                          Both fine and imprisonment

                          Supervised release of up to three (3) years

                          Through a civil action, a civil penalty of: not more than the greater
                          of the value of the property, funds, or monetary instruments
                          involved in the transaction; or $10,000. 18 U.S.C. § 1956(b).

SPECIAL ASSESSMENT:       $100 (mandatory on each count)

**FORFEITURE ALLEGATION:**

VIOLATION:      18 U.S.C. § 982(a)(1) - Criminal Forfeiture

PENALTIES:      As stated in the charging document

# Exhibit 2

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

USA ,

v.

**SHAWKI HAMMOUD ,**

Case No:  **2:21−CR−00180−MCE**
**\*SEALED\***

I hereby certify that the annexed
instrument is a true and correct copy of
the original on file in my office.
ATTEST: **KEITH HOLLAND**

Clerk, U. S. District Court
Eastern District of California

By _____
                                    Deputy Clerk
Dated _____

# WARRANT FOR ARREST

**TO: THE UNITED STATES MARSHAL**
and any Authorized United States Officer

**YOU ARE HEREBY COMMANDED TO ARREST:   Shawki Hammoud**

and bring him or her forthwith to the nearest United States magistrate judge to answer a(n)

**Indictment**

charging him or her with *(brief description of offense)*

**Money Laundering and Attempt**

| in violation of Title | **18** | United States Code, Section(s) | **1956** |

| | |
|---|---|
| J. Donati | Deputy Clerk |
| Name of Issuing Officer | Title of Issuing Officer |
| | **9/23/21**      **Sacramento, CA** |
| Signature of Issuing Officer | Date and Location |
| Bail fixed at      **NO BAIL** | by   **Magistrate Judge Deborah Barnes** |

---

### RETURN

This warrant was received and executed with the arrest of the above−named defendant

_____

| | |
|---|---|
| Date Received | Name and Title of Arresting Officer |
| Date of Arrest | Signature of Arresting Officer |

# Exhibit 3

**Title 18, United States Code, Section 2.**         **Principals**

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

**Title 18, United States Code, Section 1956.**         **Laundering of Monetary Instruments**

(a)(3) Whoever, with the intent—
        (B) to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity;
        conducts or attempts to conduct a financial transaction involving property represented to be the proceeds of specified unlawful activity, or property used to conduct or facilitate specified unlawful activity, shall be fined under this title or imprisoned for not more than 20 years, or both. For purposes of this paragraph and paragraph (2), the term "represented" means any representation made by a law enforcement officer or by another person at the direction of, or with the approval of, a Federal official authorized to investigate or prosecute violations of this section.
        . . .
(c) As used in this section—
    (4) the term "financial transaction" means (A) a transaction which in any way or degree affects interstate or foreign commerce (i) involving the movement of funds by wire or other means or (ii) involving one or more monetary instruments, or (iii) involving the transfer of title to any real property, vehicle, vessel, or aircraft, or (B) a transaction involving the use of a financial institution which is engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree;
    . . .
    (7) the term "specified unlawful activity" means—
        (A) any act or activity constituting an offense listed in section 1961(1) of this title except an act which is indictable under subchapter II of chapter 53 of title 31;
        (B) with respect to a financial transaction occurring in whole or in part in the United States, an offense against a foreign nation involving—
                (i) the manufacture, importation, sale, or distribution of a controlled substance;
                . . .
                (iii) fraud, or any scheme or attempt to defraud
                . . .
        (D) an offense under
                . . .
        section 1030 (relating to computer fraud and abuse)
        . . .

(i) Venue.—
(1) Except as provided in paragraph (2), a prosecution for an offense under this section or section 1957 may be brought in—
        (A) any district in which the financial or monetary transaction is conducted; or

1

(B) any district where a prosecution for the underlying specified unlawful activity could be brought, if the defendant participated in the transfer of the proceeds of the specified unlawful activity from that district to the district where the financial or monetary transaction is conducted. . . .

**Title 18, U.S. Code Section 1343.   Fraud by wire, radio, or television**

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. . . .

**Title 18, U.S. Code Section 1030.  Fraud and related activity in connection with computers**

(a) Whoever—

. . .

(4) knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period;

(5)

(A) knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer;

(B) intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage; or

(C) intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss.

(6) knowingly and with intent to defraud traffics (as defined in section 1029) in any password or similar information through which a computer may be accessed without authorization, if—

(A) such trafficking affects interstate or foreign commerce; or

(B) such computer is used by or for the Government of the United States;

. . .

(c) The punishment for an offense under subsection (a) or (b) of this section is—

    (2)

        (A) except as provided in subparagraph (B), a fine under this title or imprisonment for not more than one year, or both, in the case of an offense under subsection (a)(2), (a)(3), or (a)(6) of this section which does not occur after a conviction for another offense under this section, or an attempt to commit an offense punishable under this subparagraph;

. . .

    (3)

        (A) a fine under this title or imprisonment for not more than five years, or both, in the case of an offense under subsection (a)(4) or (a)(7) of this section which does not occur after a conviction for another offense under this section, or an attempt to commit an offense punishable under this subparagraph; and

. . .

    (4)

        (A) except as provided in subparagraphs (E) and (F), a fine under this title, imprisonment for not more than 5 years, or both, in the case of—

            (i) an offense under subsection (a)(5)(B), which does not occur after a conviction for another offense under this section, if the offense caused (or, in the case of an attempted offense, would, if completed, have caused)—

            (I) loss to 1 or more persons during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value;

            . . .

            (VI) damage affecting 10 or more protected computers during any 1-year period;

. . . .

**Title 18, U.S. Code Section 1961(1).  Definitions**

As used in this chapter—

(1) "racketeering activity" means (A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery), section 224 (relating to sports bribery), sections 471, 472, and 473 (relating to counterfeiting), section 659 (relating to theft from interstate shipment) if the act indictable under section 659 is felonious, section 664 (relating to embezzlement from pension and welfare funds), sections 891–894 (relating to extortionate credit transactions), section 932 (relating to straw purchasing), section 933 (relating to trafficking in firearms), section 1028 (relating to fraud and related activity in connection with identification documents), section 1029 (relating to fraud and related activity in connection with access devices), section 1084 (relating to the transmission of gambling information), section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1344 (relating to financial institution fraud), section 1351 (relating to fraud in foreign labor contracting), section 1425 (relating to the procurement of citizenship or nationalization unlawfully), section 1426 (relating to the reproduction of naturalization or citizenship papers), section 1427 (relating to the sale of naturalization or citizenship papers), sections 1461–1465 (relating to obscene matter), section 1503 (relating to obstruction of justice), section 1510 (relating to obstruction of criminal investigations), section 1511 (relating to the obstruction of State or local law enforcement), section 1512 (relating to tampering with a witness, victim, or an informant), section 1513 (relating to retaliating against a witness, victim, or an informant), section 1542 (relating to false statement in application and use of passport), section 1543 (relating to forgery or false use of passport), section 1544 (relating to misuse of passport), section 1546 (relating to fraud and misuse of visas, permits, and other documents), sections 1581–1592 (relating to peonage, slavery, and trafficking in persons).,[1] sections 1831 and 1832 (relating to economic espionage and theft of trade secrets), section 1951 (relating to interference with commerce, robbery, or extortion), section 1952 (relating to racketeering), section 1953 (relating to interstate transportation of wagering paraphernalia), section 1954 (relating to unlawful welfare fund payments), section 1955 (relating to the prohibition of illegal gambling businesses), section 1956 (relating to the laundering of monetary instruments), section 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity), section 1958 (relating to use of interstate commerce facilities in the commission of murder-for-hire), section 1960 (relating to illegal money transmitters), sections 2251, 2251A, 2252, and 2260 (relating to sexual exploitation of children), sections 2312 and 2313 (relating to interstate transportation of stolen motor vehicles), sections 2314 and 2315 (relating to interstate transportation of stolen property), section 2318 (relating to trafficking in counterfeit labels for phonorecords, computer programs or computer program documentation or packaging and copies of motion pictures or other audiovisual works), section 2319 (relating to criminal infringement of a copyright), section 2319A (relating to unauthorized fixation of and trafficking in sound recordings and music videos of live musical performances), section 2320 (relating to trafficking in goods or services bearing counterfeit marks), section 2321 (relating to trafficking in certain motor vehicles or motor vehicle parts), sections 2341–2346 (relating to trafficking in contraband cigarettes), sections 2421–24 (relating to white slave traffic),[2] sections 175–178 (relating to biological weapons), sections 229–229F (relating to chemical weapons), section 831 (relating to nuclear materials), (C) any act which is indictable under title 29, United States Code, section 186 (dealing with restrictions on payments and loans to labor organizations) or section 501(c) (relating to embezzlement from union funds), (D) any offense involving fraud connected with a case under title 11 (except a case under section 157 of this title), fraud in the sale of

securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), punishable under any law of the United States, (E) any act which is indictable under the Currency and Foreign Transactions Reporting Act, (F) any act which is indictable under the Immigration and Nationality Act, section 274 (relating to bringing in and harboring certain aliens), section 277 (relating to aiding or assisting certain aliens to enter the United States), or section 278 (relating to importation of alien for immoral purpose) if the act indictable under such section of such Act was committed for the purpose of financial gain, or (G) any act that is indictable under any provision listed in section 2332b(g)(5)(B); . . . .

**Title 18, U.S. Code Section 982.  Criminal Forfeiture**

(a)(1) The court, in imposing sentence on a person convicted of an offense in violation of section 1956, 1957, or 1960 of this title, shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property.

**Title 21, U.S. Code Section 853(p).  Criminal Forfeitures.**

(p) Forfeiture of substitute property

    (1) In general

Paragraph (2) of this subsection shall apply, if any property described in subsection (a), as a result of any act or omission of the defendant—

        (A) cannot be located upon the exercise of due diligence;

        (B) has been transferred or sold to, or deposited with, a third party;

        (C) has been placed beyond the jurisdiction of the court;

        (D) has been substantially diminished in value; or

        (E) has been commingled with other property which cannot be divided without difficulty.

    (2) Substitute property

In any case described in any of subparagraphs (A) through (E) of paragraph (1), the court shall order the forfeiture of any other property of the defendant, up to the value of any property described in subparagraphs (A) through (E) of paragraph (1), as applicable.

    (3) Return of property to jurisdiction

In the case of property described in paragraph (1)(C), the court may, in addition to any other action authorized by this subsection, order the defendant to return the property to the jurisdiction of the court so that the property may be seized and forfeited.

Exhibit 4

# EXHIBIT 4

## Exhibit 4-1



**Exhibit 4-2**



**Exhibit 4-3**

